# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHEER PACK NORTH AMERICA, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 15-14135-FDS |
| VALLEY FORGE INSURANCE COMPANY and CONTINENTAL CASUALTY COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE

This is an insurance coverage dispute. Jurisdiction is based on diversity of citizenship. Defendants Valley Forge Insurance Company and Continental Casualty Company are insurance companies who have declined to defend their policy holder, plaintiff Cheer Pack North America, LLC, in litigation. The litigation concerned food contamination allegedly caused by the failure of packaging products manufactured by Cheer Pack.

Cheer Pack manufactures flexible pouches used to package and process various food products. It sold pouches to Plum, a manufacturer of organic baby foods, which in turn had a manufacturing agreement with SunOpta, a food processor. In 2013, various Plum products manufactured and processed by SunOpta using Cheer Pack pouches became contaminated with bacteria when the pouches allegedly failed to maintain a hermetic seal during processing. The contamination resulted a voluntary recall of millions of Plum products.

Plum subsequently filed suit against both SunOpta and Cheer Pack, and SunOpta then filed a cross-claim against Cheer Pack. Valley Forge and Continental declined to defend Cheer

Pack in that litigation, contending, among other things, that the relevant insurance policies contain an exclusion for bodily injury or property damage arising out of "microbe" exposure. Those exclusions, however, contain an exception for insureds whose "business is food processing." Cheer Pack contends that its business is food processing, and therefore the exception to the exclusion should apply.

The parties have cross-moved for partial summary judgment on defendants' duties to defend. Cheer Pack has also moved for summary judgment on defendants' affirmative defense of misrepresentation. For the reasons stated below, the motion of Cheer Pack will be granted as to the duty to defend, and denied without prejudice as to the misrepresentation defense. Defendants' motion for partial summary judgment as to their duties to defend will be denied.

## I. **Background**

### A. **Factual Background**

#### 1. **The Parties**

Cheer Pack North America, LLC is a manufacturing company located in West Bridgewater, Massachusetts. It manufactures and sells flexible pouches with screw caps. The pouches are used in the manufacturing, processing, and packaging of various food products, including baby food, fruit purees, yogurt, condiments, pet food, and beverages. (Giovannone Aff. ¶¶ 3, 5).

Many of Cheer Pack's pouches are used in a "hot fill" application, in which food is pasteurized after being filled in the pouch and heat-sealed, typically through a hot-water spray. (*Id.* ¶ 6). Cheer Pack is a corporate affiliate of Gualapack North America, Inc., and brokers the sale of Gualapack filling equipment used to fill the pouches. (*Id.* at ¶ 4-5). Cheer Pack also provides on-site guidance, technical support, and maintenance services in connection with the

use of its pouches and the Gualapack filling equipment. (Def. Ex. 1 at p. 26 ¶¶ 17, 19).

From January 1, 2013, through January 1, 2014, Valley Forge Insurance Company insured Cheer Pack under a commercial general liability policy. (Pl. Ex. C). During the same period, Continental Casualty Company insured Cheer Pack under a commercial umbrella policy. (Pl. Ex. D).

### 2. The Insurance Policies

Under the primary policy, Valley Forge is obligated to pay "those sums that [Cheer Pack] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Pl. Ex. C at 1142). The policy also provides that Valley Forge had a duty to defend Cheer Pack "against any 'suit' seeking those damages." (*Id.*).

The primary policy provides that it does not apply to claims of "bodily injury" or "property damage" "arising out of or relating to" contact with, exposure to, or the growth or presence of any "fungi or microbes." (*Id.* at 1173). That exclusion does not apply, however, to claims involving bodily injury "where [the insured's] business is food processing, sales, or serving, and the 'bodily injury' is caused solely by food poisoning in connection with such processing, sales, or serving." (*Id.*).

Under the umbrella policy, Continental is obligated to pay "on behalf of [Cheer Pack] those sums in excess of 'scheduled underlying insurance,' 'unscheduled underlying insurance' or the 'retained limit' that [it] becomes legally obligated to pay as 'ultimate net loss' because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies." (Pl. Ex. D at 0025). The umbrella policy also includes a duty to defend. (*Id.* at 0039).

Like the primary policy, the umbrella policy excludes coverage for any injury caused by "the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence

3

of, or presence of any 'fungi or microbes.'" (*Id.* at 0029). Also like the primary policy, the "microbe" exclusion in the umbrella policy contains an exception for "microbes that cause food poisoning, if [the insured's] business is food processing, sales, or serving." (Pl. Ex. D. at 0038).[1]

### 3. <u>The Underlying Claims</u>

The claims underlying this dispute arise out of a contractual relationship between Cheer Pack, Plum (a provider of organic foods and snacks), and SunOpta (a food manufacturer). (Pl. Ex. E. at ¶¶ 19-20). In 2011, Plum and SunOpta entered into an agreement in which SunOpta would manufacture, process, sanitize, and package Plum's products to Plum's specifications. (*Id.* at ¶ 22). As part of that agreement, SunOpta agreed to manufacture Plum products in packages made by Cheer Pack and to use filling equipment manufactured by Gualapack. (*Id.* ¶ 23). The Plum products that SunOpta agreed to produce included pureed fruit, vegetable, and grain combinations intended for consumption by babies and toddlers. (*Id.* ¶ 19).

As part of the manufacturing process, SunOpta subjected filled Cheer Pack pouches to heat pasteurization, in which the pouches were held under a hot water spray for a minimum of three minutes. (*Id.* ¶¶ 39-40). Following pasteurization, the pouches were then cooled using cold water. (*Id.* ¶ 41). According to the complaint subsequently filed by Plum against SunOpta, between June and August of 2013, SunOpta did not adequately control or test the water in the cooling tower to minimize microbial contamination. (*Id.* ¶ 43). When testing was conducted in August 2013, it revealed the presence of substantial microbial growth in the cooling water. (*Id.* ¶ 46).

In late September and early October of 2013, Plum and SunOpta began receiving

---

[1] Unlike the primary policy, the food-processing exception to the microbe exclusion in the umbrella policy is contained within the definition of "fungi or microbes" rather than in the body of the exclusion itself. Under the umbrella policy, the food-processing exception thus applies to claims of bodily injury as well as property damage, whereas under the primary policy, the exception only applies to claims of bodily injury.

4

complaints from customers that pouches of Plum's products were bloated or swollen, which is evidence of bacterial growth in the pouches. (*Id.* ¶¶ 49-50). Plum also received complaints from customers who had experienced gastrointestinal symptoms and discomfort. (*Id.* ¶ 3). On November 5, 2013, SunOpta notified Plum of the presence of microbial growth in the cooling water. (*Id.* ¶ 57). Three days later, Plum initiated a voluntary recall of all products manufactured at the SunOpta facility during the affected dates. (*Id.* ¶ 60).

SunOpta acknowledged that it produced contaminated products for Plum and that the contamination occurred during the cooling process, but disclaimed any responsibility for the contamination. (*Id.* ¶¶ 82, 85). SunOpta alleged that Cheer Pack's pouches contained a defect that prevented them from maintaining a hermetic seal and that it was the failure to seal that caused the pouches to become contaminated during the cooling process. (*Id.* ¶ 86).

Plum filed a complaint against SunOpta on February 3, 2015, alleging that SunOpta breached the manufacturing agreement by failing to ensure that its products were manufactured in a clean and sanitary environment, and sought damages on that basis. (Pl. Ex. M). Plum then filed an amended complaint on April 13, 2015, adding Cheer Pack as a defendant and alleging that it breached its express and implied warranties by selling pouches that failed to maintain a hermetic seal. (Pl. Ex. E at ¶¶ 132, 137). Plum also sought damages from Cheer Pack. (*Id.* ¶ 139).

On May 4, 2015, SunOpta filed a cross-claim against Cheer Pack. (Def. Ex. 1). SunOpta alleged that the contamination was caused by the failure of the Cheer Pack pouches to seal properly. (*Id.* at 29 ¶¶ 35-38). SunOpta sought to recover damages from Cheer Pack related to the recall of contaminated pouches. (*Id.* at 54 ¶ 164).

5

### 4. The Insurance Dispute

On November 19, 2013—after the recall, but before Plum had filed suit—Cheer Pack notified its insurers of the potential claims against it. (Pl. Ex. I). On December 13, 2013, Valley Forge responded by letter, stating that it would investigate the matter, but that it retained the right to disclaim coverage. (Pl. Ex. J at 1011, 1014). After receiving a notification on May 20, 2014, that Plum had retained counsel to represent it in connection with the recall, Valley Forge and Continental wrote to Cheer Pack stating that they would "defend this claim under the reservation of rights below." (Pl. Ex. K at 1025). The letter then set forth several bases on which coverage might be denied, including the microbial exclusion. (*Id.* at 1028). The insurers also reserved the right to re-evaluate the duty to defend if and when Plum filed a lawsuit. (*Id.* at 1033).

On April 15, 2015, Cheer Pack notified the insurers that Plum had filed suit against it. (Def. Ex. 6). On May 8, 2015, Cheer Pack further notified the insurers that SunOpta had filed a cross-claim against it. (Def. Ex. 7). On May 26, the insurers informed Cheer Pack of their conclusion that "the Plum suit seeks damages that are not covered under the policies" and that they "therefore deny any obligation to defend or indemnify Cheer Pack with regard to the Plum suit." (Bell Aff. Ex. O). As grounds for that denial, the insurers stated that: (1) the amended complaint did not include any allegations suggesting "bodily injury;" (2) the allegations may not satisfy the policies' definitions of "property damage;" (3) the allegations may not describe an "occurrence" as defined by the policies; and (4) the fungi/microbe exclusions precluded coverage. (*Id.* at 863-67). At that time, the insurers stopped paying Cheer Pack's defense costs. (Giovannone Aff. ¶ 12).[2]

---

[2] Cheer Pack, Plum, and SunOpta reached a settlement agreement on July 29, 2016. (Pl. Ex. U).

B. **Procedural Background**

On December 12, 2015, Cheer Pack filed this action against Valley Forge and Continental. The complaint asserts a breach of contract claim against Valley Forge based upon its failure to defend (Count One); seeks a declaratory judgment against Valley Forge stating that it has a duty to indemnify (Count Two); and seeks a declaratory judgment against Continental stating that it has a duty to defend and indemnify (Count Three). In their answers, defendants raised a number of defenses, including alleged misrepresentation by Cheer Pack.

Cheer Pack has moved for partial summary judgment on the insurer's duty to defend. In its motion, it contends that the policies insure against the risk at issue, and that the insurers are not entitled to a misrepresentation defense. On October 19, 2016, Valley Forge and Continental have cross-moved for partial summary judgment on their duty to defend. Defendants also moved, pursuant to Fed. R. Civ. P. 56(d), to defer consideration of the issue of misrepresentation.

Cheer Pack then moved to strike certain documents submitted by defendants in support of their motion for summary judgment.

## II. Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896

F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

## III.   Analysis

### A.   Motion to Strike

Cheer Pack has moved to strike several documents submitted by defendants in support of their motion for partial summary judgment on the ground that the documents were not produced until after the close of discovery.  The documents at issue are communications from the Town of West Bridgewater and the Massachusetts Department of Public Health indicating that Cheer Pack is not a licensed food processor.

Whether Cheer Pack is a licensed food processor is not dispositive on the issue of whether its "business is food processing" under the terms of the policies, and the Court will not rely on the disputed documents in deciding the motions.  The motion to strike will therefore be denied as moot.

### B.   Cross-Motions for Partial Summary Judgment

A duty to defend is triggered when the facts as alleged in the relevant complaint, and as known or readily knowable by the insurer, "are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms."  *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 200 (2010).  The relevant facts need not "specifically and unequivocally" make

out a claim that falls within the insurance coverage, but need only show "a possibility" that the liability is within the coverage. *Id.* at 200-01 (internal quotation marks omitted). "The process is not one of looking at the legal theory enunciated by the pleader but of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Id.* at 201 (internal quotation marks omitted). However, when the relevant allegations "lie expressly outside of the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant." *Id.* at 201 (internal quotation marks omitted).

As relevant here, defendants have a duty to defend if the claims against Cheer Pack allege the following: "bodily injury" or "property damage," caused by an "occurrence" or "incident," that does not fall within the "microbe" exclusions, as modified by the "food processing" exceptions. Each will be addressed in turn.

### 1. Whether the Claims Allege "Bodily Injury" or "Property Damage"

As noted, the policies cover damages payable because of "bodily injury" or "property damage." (Pl. Ex. C at 1142; Pl. Ex. D. at 0025). They define "bodily injury" to include "bodily injury, sickness or disease sustained by a person." (Pl. Ex. C at 1152; Pl. Ex. D at 0035). They define "property damage" to include "[p]hysical injury to tangible property, including all resulting loss of use to that property" and "[l]oss of use of tangible property that is not physically injured." (Pl. Ex C at 1153; Pl. Ex. D at 0037)

It appears to be undisputed that Plum's complaint against Cheer Pack states a claim based upon property damage. (*See* Def. Mem. at 23 ("[The fact that] Plum's damages 'arise out of' or 'relate to' property damage from the alleged or threatened exposure to microbes cannot

9

reasonably be disputed.")). In addition, the complaint is "reasonably susceptible of an interpretation that states or roughly sketches a claim" for bodily injury. *Billings*, 458 Mass. at 200. The complaint alleged that Plum voluntarily recalled products manufactured using Cheer Pack's pouches after receiving customer complaints of spoilage, bloated packaging, and gastrointestinal symptoms and discomfort. (Pl. Ex. E at ¶¶ 2-3, 133). While the complaint did not explicitly seek damages based on bodily injury, it is reasonable to conclude that losses stemming from bodily injury to Plum's customers could be proved based on its allegations.[3]

### 2. Whether the Claims Arise out of an "Incident" or "Occurrence"

The policies state that they cover claims seeking damages for bodily injury or property damage only if the injury or damage is caused by an "occurrence" or "incident." (Pl. Ex. C at 1142; Pl. Ex. D at 0025). Both are defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Pl. Ex. C at 1154; Pl. Ex. D at 0036). "The term 'accident' is to be broadly construed in a policy insuring against damage by accident. In its common signification the word means an unexpected happening without intention or design." *Beacon Textiles Corp. v. Employers Mut. Liab. Ins. Co. of Wisc.*, 355 Mass. 643, 645-46 (1969) (internal citations omitted).

Here, Plum alleged that the pouches failed to maintain a hermetic seal during processing despite Cheer Pack's representations to the contrary. (Pl. Ex. E at ¶ 130, 133). The pouches thus "acted or failed to act at some point in time contrary to the intentions and expectations" of Cheer Pack, and the resulting contamination and damages were therefore caused by an "incident" or "occurrence." *Beacon Textiles Corp.*, 355 Mass. at 645.

---

[3] Other facts available to defendants supported that conclusion. For example, a June 19, 2014 letter on behalf of defendants noted that Plum had alleged damages associated with the recall including, but not limited to, "consumer reimbursement and consumer personal injury claims." (Pl. Ex. L at 1026).

10

### 3. **Whether the Microbe Exclusions Apply**

The policies do not cover claims alleging bodily injury or property damage caused by "the actual, alleged or threatened contact with, exposure to, existence of, or growth or presence of any 'fungi' or 'microbes.'" (Pl. Ex. C at 1173; Pl. Ex. D at 0029).[4] The Valley Forge policy defines "microbe" to include any "non-fungal microorganism or non-fungal, colony-form organism that causes infection or disease." (Pl. Ex. C at 1173). The Continental policy defines "microbe" to include "[a]ny bacteria, virus, or any other non-fungal, single celled or colony-form organism." (Pl. Ex. D at 0038).[5]

Plum's complaint alleged that the recalled products were found to contain bacterial contaminants, and that the contamination caused product spoilage and bloating as well as gastrointestinal symptoms and discomfort among consumers. (Pl. Ex. E at ¶¶ 2-3). It further alleged that the contamination was due the failure of plaintiff's pouches to seal hermetically, which enabled microorganisms in the cooling water to enter the pouches. (*Id.* ¶ 86, 132-33). The property damage and bodily injuries at issue were thus allegedly caused by contact with microbes, such that the microbe exclusions apply.

### 4. **Whether the Food-Processing Exceptions Apply**

Under the policies, the microbe exclusions do not apply if the insured's "business is food

---

[4] The precise wording of the microbe exclusion varies between the two policies. The Valley Forge policy states that it does not apply to bodily injury or property damage "arising out of or relating to the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any 'fungi' or 'microbes.'" (Pl. Ex. E. at 1173). The Continental policy states that it does not apply to bodily injury or property damage that "would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any 'fungi' or 'microbes.'" (Pl. Ex. D at 0029).

[5] According to one treatise, the insurance industry adopted such exclusions "[i]n response to the wave of toxic mold and Sick Building cases against insureds in the construction industry." Scott C. Turner, *Insurance Coverage of Construction Disputes* § 41E:1 (1999). The exclusions were thus "intended to absolve insurance companies for liability related to mold in walls caused by defective construction." *Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc.*, 651 F. Supp. 2d 1367, 1376 n.12 (N.D. Ga. 2013).

processing, sales, or serving." (Pl. Ex. C at 1173; Pl. Ex. D at 0038). Under the Valley Forge policy, that exception applies only to claims of bodily injury, and it adds the further restriction that the "'bodily injury' [must be] caused solely by food poisoning in connection with the food processing, sales, or serving." (Pl. Ex. C at 1173). Under the Continental policy, the exception is restricted to incidents in which microbes have "caused food poisoning," but the exception is not restricted to claims of bodily injury only. (Pl. Ex. D at 38). Defendants' duties to defend therefore turn upon whether Cheer Pack's "business is food processing" and whether the claims against Cheer Pack alleged bodily injuries caused solely by food poisoning (as required under the Valley Forge policy) or involved bodily injuries or property damage caused by food poisoning (as required under the Continental policy).

This dispute thus involves an exclusion (the policies do not cover injuries or damages caused by "microbes") with an exception (the exclusion does not apply if the policyholder's "business is food processing"). Because it is an exception to an exclusion, any ambiguity must be construed against the insurer, so as to broaden the exception and provide coverage. *Cf. Vappi & Co. v. Aetna Cas. & Sur. Co.*, 348 Mass 427, 431 (1965) ("Exclusions from coverage are to be strictly construed.").

### a. **Whether Plaintiff's Business Is Food Processing**

It is undisputed that packing or packaging food constitutes food processing. (*See* Pl. Mem. at 12; Def. Mem. at 18). The principal dispute is whether manufacturing and selling food packaging, selling filling equipment, and providing assistance concerning how to use that equipment may constitute "food processing." There are two disputed phrases: "food processing" and "business is."

### (1) "Food Processing"

The first issue concerns the meaning of the phrase "food processing." Defendants cite the Oxford English Dictionary, which defines "food processing" as "the action of performing a series of mechanical or chemical operations on food in order to change or preserve it." (Def. Mem. at 18). That definition suggests that the term encompasses only those who actually perform acts directly to food, such as cooking, cutting, chopping, or mixing (which "changes" the food) or adding preservatives or canning the food (which "preserves" the food).

That is not, however, the only definition. For example, the Iowa Supreme Court, quoting the Second Edition of Webster's International Dictionary, defined food "processing" to include "convert[ing] into marketable form," and defined a "processor" as "one who is in the business of converting any agricultural commodity into a marketable form." *Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Comm.*, 81 N.W.2d 437, 501-02 (Iowa 1957).[6] Courts have recognized that protecting food from contamination is central to converting it into marketable form. *See id.* at 503 (holding that freezing constitutes food processing because it prevents spoilage, preserves food, and prepares food for the market); *Michigan Allied Dairy Ass'n v. Auditor Gen.*, 5 N.W.2d 516, 518 (Mich. 1942) (stating that milk is not marketable until pasteurized, cooled, and protected from contamination).[7] And packaging itself can be essential to the process by which food is preserved and made marketable. *See Michigan Allied Dairy*, 5 N.W.2d at 517-18 ("We hold that the use of bottles and cans is part of the industrial processing

---

[6] *Fischer* was a sales tax case, in which the question was the applicability of an exemption for electricity sold to a freezing plant. 81 N.W.2d at 498-99. The key term in the exemption was "processing." *Id.* at 500. The Iowa Supreme Court held that the freezing of meat, butter, and eggs, and maintaining cheese at a consistent temperature, constituted food "processing" within the meaning of the statute, although mere refrigeration did not qualify. *Id.* at 503-04.

[7] Like *Fischer*, *Michigan Allied Dairy* was a sales tax case that involved the meaning of an exemption: there, an exemption for "[p]roperty sold to a buyer for consumption or use in industrial processing or agricultural producing." 5 N.W.2d at 516-17.

13

of milk").

Cheer Pack contends that its pouches—which are intended to create a hermetic seal that protects food during and after pasteurization—play a central role in preserving food and converting food into marketable form. (Pl. Mem. at 12-13). As the facts of this case illustrate, but for the seal created by its pouches, food contained in those pouches would not be properly preserved and therefore not marketable. In other words, the pouches that Cheer Pack designs, manufactures, and sells are more than simply "convenient containers in which to deliver [their] contents." *Michigan Allied Dairy*, 5 N.W.2d at 517. The pouches themselves, and the seal that they are designed to create, are necessary in order to render their contents safe and marketable.

In sum, if "food processing" can be defined to include converting food into marketable form, and packaging can be essential to the process by which food is converted into safe and therefore marketable form, then there is a legitimate argument that (at least in some circumstances) "food processing" includes the provision of that packaging. That, in turn, means that the term "food processing," at least as used in the policies and as applied in the present circumstances, is ambiguous. *See Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995) ("[A]n ambiguity exists in an insurance contract when the language contained therein is susceptible of more than one meaning.").[8] Because ambiguities, particularly those providing exclusions from coverage, "must be construed against the insurer," plaintiff's business may be considered "food processing" for purposes of coverage under the policy. *Vappi*, 348 Mass. at 431.

---

[8] Of course, that is not the only reasonable interpretation of the policies. But if the insurers intended to exclude any activity other than the direct handling of food during processing operations, it would have been easy enough to say so. And while the intentions of the drafters are not relevant in interpreting the policy, it is noteworthy that the exclusion was drafted to address the problem of toxic mold in buildings, not the manufacture of soft pouches for baby food.

14

### (2) "Business Is"

Any definition of "food processing" itself must be read in conjunction with the phrase "business is." As to the meaning of that phrase, courts have interpreted similar language as unambiguously meaning "primary, essential, chief or principal business." *American Employers' Ins. Co. v. DeLorme Pub. Co.*, 39 F. Supp. 2d 64, 81 (D. Me. 1999); *accord State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 261 (4th Cir. 2003). In *DeLorme*, the court construed an exclusion for advertising injuries arising out of "[a]n offense committed by an insured whose business is . . . publishing." *DeLorme*, F. Supp. 2d at 80. DeLorme—a company that "principally engages in the design, printing and sale of atlases and maps, [and] in the development and sale of computer mapping software and databases, and . . . hardware," *id.* at 67—was sued by Rand McNally for trademark infringement. DeLorme contended that the exclusion did not apply because "business is" means "*sole* business" and that, while it is "*in* the business of publishing, publishing is not its *sole* business," as it also engages in other business activities, such as the development of hardware and software. *Id.* at 80 (emphasis original). The court rejected that distinction, concluding that "[t]he phrase 'insured whose business is . . . publishing' clearly applies to insureds whose primary, essential, chief or principal business is publishing." *Id.* at 81. The court reasoned that it would belie logic to constrain the exclusion to only those companies engaged *solely* in publishing, as virtually no business engages in only a single activity, and, conversely, that it would be unreasonable to expand the exclusion to encompass companies who engaged in publishing activities only as an ancillary to their primary activities, such as manufacturing. *Id.* at 81-82.[9]

---

[9] Defendants rely on *DeLorme* in contending that "[t]o conclude that Cheer Pack's business '*is* food processing' would untenably stretch the scope of the insurance contract" beyond both its plain meaning and the parties' reasonable expectations. (Def. Mem. at 17). However, whether that conclusion would untenably stretch the scope of the contract cannot be resolved simply based upon the meaning of the phrase "business is." Cheer Pack

Putting those pieces together, it appears undisputed that "food processing" includes the act of preserving food safely, and "business is" means "primary, essential, chief or principal business." *DeLorme Pub. Co.*, 39 F. Supp. 2d at 81. Thus, the ultimate question is whether the "primary, essential, chief or principal business" of Cheer Pack is preserving food safely. It appears that the answer to that question is yes.

It is significant that the exception from the microbe exclusion applies to those whose "business is food processing," not just to "food processors." Nearly the entire business of Cheer Pack involves the preservation of food. It makes pouches that enable food to be pasteurized and rendered shelf-stable, and it sells the equipment used to fill the pouches and provides support in using that equipment. This is not a case, like *DeLorme*, where the insured is engaged in a number of business areas, only some of which fall within the exception. Nor does Cheer Pack manufacture a wide range of goods, only some of which are used in food processing, or a generic good (such as a box, bottle, or metal can) that may be used in food storage or food transport applications as well as others. Cheer Pack—at least so far as the summary judgment record indicates—manufactures pouches for food, sells filling equipment so that those pouches can be filled with food, and provides assistance in the use of that equipment solely for the purpose that the pouches and equipment be used in the processing and preservation of food so that it can be safely consumed.

---

does not contend that it is engaged in food processing only in part or as an ancillary activity. It does not, for example, contend that it is engaged primarily in manufacturing but occasionally engages in some food processing activities. Rather, it contends that its business—manufacturing pouches used for food preservation, selling filling equipment, and providing assistance in using that equipment—*is* food processing. (Pl. Mem. at 2, 12). In other words, it contends that it is, in fact, primarily engaged in the business of food processing. Contrary to defendants' contention, *DeLorme* itself does not suggest otherwise. Rather, the phrase "business is" must be read in conjunction with the phrase "food processing."

16

### b. Whether the Injuries Were Caused by Food Poisoning

Finally, the food-processing exception in the Valley Forge policy further requires that the injury alleged be caused "solely by food poisoning in connection with such processing," (Pl. Ex. C at 1173), and the exception in the Continental policy is restricted to incidents in which microbes have "caused food poisoning." (Pl. Ex. C at 1173; Pl. Ex. D at 0038). Those limitations are satisfied here. The Plum complaint alleged that consumers complained about spoilage and gastrointestinal symptoms and discomfort, and that the spoilage and gastrointestinal symptoms were caused by the failure of Cheer Pack pouches to maintain a hermetic seal during processing. (Pl. Ex. E at ¶¶ 2-3, 133). The complaint further alleged that Plum had to recall or withhold distribution of millions of products due to the bacterial contamination and customer complaints. (*Id.* at ¶¶ 2-3, 61-63). Thus, the complaint alleged that the bodily injury was caused solely by food poisoning in connection with the processing of the pouches, as required under the Valley Forge policy, and that the incident or occurrence was one in which microbes caused food poisoning, as required under the Continental policy.

Furthermore, the food poisoning was in connection with the role of Cheer Pack in the processing of the affected goods, as required under the Valley Forge policy. Again, Cheer Pack produces pouches designed to create a hermetic seal during and after pasteurization, which then enables the packaged food to be shelf stable. It is precisely the creation of the hermetic seal that is alleged to have failed and caused the resulting food poisoning.

In sum, there is at least an ambiguity as to whether Cheer Pack's "business is food processing" for the purposes of the exception to the microbe exclusion, and that ambiguity must be resolved against the insurers. Defendants therefore have a duty to defend Cheer Pack in

17

connection with Plum's complaint and SunOpta's cross-claim.[10] Cheer Pack's motion for partial summary judgment will therefore be granted to the extent that it seeks judgment on defendants' duties to defend, and defendants' motion for partial summary judgment will be denied.[11]

### 5. Misrepresentation Defense

Cheer Pack has also moved for summary judgment on defendants' misrepresentation defense. In their answers, defendants alleged that coverage is barred to the extent that Cheer Pack misrepresented or concealed facts material to the risks that defendants undertook in insuring it. Defendants appear to allege that Cheer Pack misrepresented the nature of its business by failing to inform defendants that it is in the business of food processing. (Pl. Ex. Z at 3; Pl. Ex. AA at 3).[12]

Defendants have moved, pursuant to Fed. R. Civ. P 56(d), to defer ruling on the misrepresentation defense pending additional discovery. As defendants contend, any material misrepresentation by Cheer Pack could enable defendants to rescind the policies. Thus, while relevant to defendants' duties to defend, the misrepresentation issue exceeds the scope of the

---

[10] Under the Valley Forge policy, the food-processing exception to the microbe exclusion applies only to claims of bodily injury. In other words, under that policy, claims of property damage arising out of contact with fungi or microbes are absolutely barred. However, "[b]ecause '[i]t is not uncommon for a lawsuit against an insured to assert some claims that are covered by the insurance policy and others that are not,' the general rule in Massachusetts in the general liability insurance context is that 'an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint.'" *GMAC Mortg., LLC v. First Am. Title Ins. Co.*, 464 Mass. 733, 738 (2013) (quoting *Liberty Mut. Ins. Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001) (second alteration original). "This is known as the 'in for one, in for all' or 'complete defense' rule." *Id.* Under that rule, because the complaint can reasonably be read to allege damages based on bodily injury, defendant Valley Forge has a duty to defend the entire lawsuit, including claims of property damage. For the same reasons, the duty to defend also extends to SunOpta's cross-claim. *See Nashua Corp. v. Liberty Mut. Ins. Co.*, 1997 WL 89163, at *10-11 (Sup. Ct. Mass. Feb. 18, 1997) (extending duty to defend to counterclaims and cross-claims).

[11] Because the Court finds that the food-processing exception to the microbe exclusion applies, it does not reach plaintiff's alternative argument that the concurrent causation doctrine applies.

[12] In its initial quote to Cheer Pack (made in 2011), Valley Forge estimated Cheer Pack's premium based on its belief that Cheer Pack was engaged in "Plastic or Rubber Goods Manufacturing." (Def. Ex. 3 at 439, 444). Cheer Pack's broker subsequently asked that the policy reflect the fact that Cheer Pack also sold filling equipment. (*Id.* at 9474; Def. Ex. 4). The policy was then amended to include "Machinery or Machinery Parts Manufacturing" in addition to "Plastic or Rubber Goods Manufacturing." (Def. Ex. 5 at 1147, 1152).

18

initial duty-to-defend phase of this litigation. (*See* Docket No. 29 (establishing bifurcated discovery)). Furthermore, it appears that the parties agreed to set aside the misrepresentation issue until after dispositive motions on the duty to defend, and that the parties then planned their discovery accordingly. (*See* Def. Ex. 9). Defendants now contend that they do not have a sufficient factual basis on which to respond to the motion for summary judgment on the issue of misrepresentation. The Court will therefore deny the motion for summary judgment on the issue of misrepresentation, pursuant to Fed. R. Civ. P. 56(d), without prejudice to its renewal following an opportunity for further discovery.

**IV. Conclusion**

For the foregoing reasons,

1. The motion of plaintiff Cheer Pack North America, LLC to strike certain documents submitted by defendants is DENIED as moot.

2. The motion of plaintiff Cheer Pack North America, LLC for partial summary judgment is GRANTED in part as to the insurers' duty to defend and DENIED in part as to the misrepresentation defense.

3. The motion of defendants Valley Forge Insurance Company and Continental Casualty Company for partial summary judgment and to defer ruling on misrepresentation is GRANTED in part as to the misrepresentation defense and DENIED in part as to the insurers' duty to defend.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: April 28, 2017   United States District Judge